COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia

DERRICK DEVON LOGAN

                                      OPINION BY
v.    Record No. 0367-98-2      JUDGE LARRY G. ELDER
                                   MARCH 23, 1999
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
William L. Wellons, Judge

> Buddy A. Ward, Public Defender (Office of the
> Public Defender, on brief), for appellant.
>
> Ruth Morken McKeaney, Assistant Attorney
> General (Mark L. Earley, Attorney General, on
> brief), for appellee.


Derrick Devon Logan (appellant) appeals from his bench trial conviction for possession of cocaine with intent to distribute in violation of Code § 18.2-248. On appeal, he contends the trial court erroneously denied his motion to suppress. He argues that the officers violated his rights under the United States and Virginia Constitutions because they did not have the reasonable, articulable suspicion necessary to justify a search of his person. We hold that the evidence was sufficient to establish reasonable, articulable suspicion that appellant was armed, and we affirm his conviction.

I.

FACTS

On May 19, 1997, Officers Edmonds and Lawhorn stopped the car in which appellant was a passenger because it did not display a valid inspection sticker.  When Edmonds approached the small two-door car, he saw a 9 mm handgun in the middle of the dashboard.  When Officer Edmonds noticed the gun, he asked the driver for his license and registration and then had the driver and three passengers exit the vehicle for officer safety. Neither officer could say which seat in the car appellant had occupied.  Edmonds testified that the passengers were young and "all seemed kind of nervous."  He said that, as they were exiting the vehicle, "all of them had their hands in their pocket[s] . . . .  They had a hard time being stationary; just kept moving; just continued to make eye contact towards one another."  Edmonds later testified, however, when recalled by the Commonwealth, that he "[could not] really say" that "[appellant] was nervous by himself" or that he had his hands in his pockets.[1]

---

[1]The Commonwealth conceded on oral argument to the trial court that "[Officer Edmonds] couldn't recall [appellant] being nervous" and that Edmonds said only that "[t]he group appeared to be nervous and some of them had put their hands in their pockets."

In response to Edmonds' questions, the driver said that the gun on the dashboard was his. Edmonds seized the gun and discovered it was loaded. The driver said he wanted to talk to Edmonds, so Edmonds asked for permission to search the driver, which he received. After patting the driver down, Edmonds allowed him to sit in the patrol car. At that time, which was less than five minutes after the officers initiated the traffic stop, Edmonds noticed that Lieutenant Loftus had arrived on the scene and that he and Lawhorn were talking to the passengers. Edmonds then ran a registration and license check for the vehicle and a permit check for the gun and wrote the summons for the invalid inspection sticker.[2] After issuing the summons and before exiting the police vehicle with the driver, Edmonds obtained the driver's permission to search the vehicle.

While Edmonds dealt with the driver, Lawhorn stood with the three passengers under a nearby tree. Lawhorn testified that appellant was not acting "nervous." Although Lawhorn "had [all the passengers] keep their hands out of their pockets" and "had to remind them" on "a couple of occasions," he could not recall whether he had to remind appellant. Lawhorn testified that

---

[2]These checks revealed that both the vehicle and the gun were properly registered to the driver and that the driver had a valid license.

- 3 -

"[i]t wasn't very long [before Lieutenant Loftus arrived on the scene] because [he] was pretty close to the area." Upon his arrival, Loftus asked Lawhorn--who had been on the police force less than a year and "had just come out of the academy"--whether he had frisked the passengers for weapons for officer safety. Lawhorn had not thought about conducting pat-down searches earlier and patted appellant down after Loftus' inquiry. Lawhorn believed that he patted appellant down before Edmonds searched the driver's car. During the pat-down, Lawhorn felt a hard object in appellant's left front pocket which "[he] thought . . . was a knife." He removed the item, which later proved to be crack cocaine.

In denying appellant's motion to suppress, the trial court noted that portions of the testimony of Officers Edmonds and Lawhorn were inconsistent and that it would give Officer Edmonds' observations more weight because he was the primary investigating officer and had more years of experience as a police officer than did Lawhorn. It found that, at the time appellant was searched, "the citation . . . had not yet been issued, and [Officer Edmonds] was still in the car writing." As a result, it held that the search for weapons was appropriate, and it denied the motion to suppress.

The trial court subsequently convicted appellant of the charged offense.

## II.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996)). However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts

of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Further, the Fourth Amendment requires only that an objectively reasonable basis exist for a search.  See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).  "'[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as [all] the circumstances, viewed objectively, justify that action.'"  Id. at 813, 116 S. Ct. at 1774 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978)) (emphasis added).

Appellant concedes that Officer Edmonds lawfully stopped the vehicle in which appellant was riding.  Further, appellant does not contend that he was forced to exit the vehicle or remain at the scene of the stop against his will and without legal basis.  He contends only that the officers lacked the reasonable, articulable suspicion necessary to frisk him for weapons once the stop had been effected.

The "generalized risk to officer safety" which permits officers "to order occupants to exit a lawfully stopped vehicle"

is insufficient "to justify a routine 'pat down' of all passengers as a matter of course." United States v. Sakyi, 160 F.3d 164, 168-69 (4th Cir. 1998); see Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997) (holding that officer may require passengers to exit lawfully stopped vehicle for officer safety without particularized suspicion of danger or wrongdoing). An officer may frisk a passenger in a lawfully stopped vehicle if the officer has reasonable, articulable suspicion that the passenger poses a threat to the officer's safety. See, e.g., Lansdown v. Commonwealth, 226 Va. 204, 212-13, 308 S.E.2d 106, 111-12 (1983) (in case where vehicle was driven evasively at speeds exceeding 80 m.p.h. and stopped on unlit street and occupants were unable to provide identification, holding that officer was justified in believing driver and passengers might be armed and dangerous, justifying frisk for weapons); James v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (upholding frisk of passenger who was in vehicle with person wanted on a felony warrant and who appeared nervous, failed to comply with officer's request to keep his hands on dashboard, and kept asking to exit the vehicle). Further, the attendant circumstances which provide the necessary reasonable suspicion to search a passenger do not require that the passenger's

conduct itself be suspicious:  "A passenger's conduct may be sufficient to arouse reasonable suspicion, but it is not necessary when other factors are present."  Sakyi, 160 F.3d at 169-70 (citation omitted).

In Sakyi, neither the driver nor the passenger could produce any identification and, when the driver retrieved his vehicle registration, the officers spotted drug paraphernalia in the glove box.  Id. at 166.  After arresting the driver for driving on a revoked license and prior to conducting a consensual search of the car, one of the officers patted the passenger down for weapons and found cocaine.  Id.

Although Sakyi involved drug paraphernalia, the Fourth Circuit held that a reasonable, articulable suspicion of the presence of drugs gave rise to a concern for the presence of guns, which, "in the absence of factors allaying [the officer's] safety concerns, . . . [permitted the officer to] pat [the occupants of the vehicle] down briefly for weapons to ensure the officer's safety and the safety of others."  Id. at 169; see Peguese v. Commonwealth, 19 Va. App. 349, 352-53, 451 S.E.2d 412, 414 (1994) (en banc) (upholding pat-down search of accused driver whose passenger had engaged in what appeared to be a drug transaction).  In so holding, the Fourth Circuit observed that

- 8 -

> when drugs are suspected in a vehicle and
> the suspicion is not readily attributable to
> any particular person in the vehicle, it is
> reasonable to conclude that all occupants of
> the vehicle are suspect.  They are in the
> restricted space of the vehicle presumably
> by choice and presumably on a common
> mission.

Sakyi, 160 F.3d at 169.

Here, similar but stronger circumstances provided an objectively reasonable, articulable suspicion that appellant and the other passengers presented a danger to Officers Edmonds and Lawhorn.  The evidence, viewed in the light most favorable to the Commonwealth, proved that Officer Edmonds spotted not drug paraphernalia in the glove box but a firearm in plain view in the middle of the dashboard as soon as he approached the vehicle in which appellant was riding.  Although the driver claimed ownership of the weapon, it was in plain view from outside the vehicle, and under the principles set out in Sakyi, a reasonable officer was free to conclude that the weapon could have belonged to any of the vehicle's occupants.  Subsequent events did not allay officer concerns about safety.  When Edmonds asked appellant and the other passengers to exit the vehicle, at least some of them appeared nervous and had their hands in their pockets, and they all moved around a lot and continued to make

eye contact with each other.[3]  Officer Lawhorn instructed appellant and the other passengers to keep their hands out of their pockets, and he had to remind them on "a couple of occasions."  Even when Lieutenant Loftus arrived on the scene, the vehicle's occupants still outnumbered the officers.  See Lansdown, 226 Va. at 213, 308 S.E.2d at 112 (noting that, if officer had reasonable grounds to fear for his safety, mere increase in number of officers at scene insufficient as matter of law to dispel that fear).

Although a brief delay may have occurred between the officers' initial development of reasonable suspicion for a pat-down search and the actual execution of the search, no principle of law provides that the basis for a pat-down search dissolves if it is not conducted immediately.  See Bethea v. Commonwealth, 245 Va. 416, 420, 429 S.E.2d 211, 213-14 (1993) (in case decided before Maryland v. Wilson, rejecting argument of accused that delay in conducting pat-down proved officer had insufficient concern for his safety to require accused to exit vehicle); see also United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996) (holding that officer's delay in frisking accused

_____

[3]The trial court found that all the vehicle's occupants had their hands in their pockets, but the testimony of Edmonds and Lawhorn proved only that some of the occupants had their hands in their pockets.

until after back-up officer arrived on scene and reminded him of safety concern did not prove that officer lacked particularized suspicion for the frisk, especially in light of fact that, in the interim, officer had found gun on companion of accused and arrested companion, which was likely to heighten threat accused posed to officer safety). Nothing in the record indicates that the facts which provided the basis for the pat-down had ceased to exist before the pat-down was executed. In fact, the behavior of some of the passengers during and after their exit from the car provided additional support for the pat-down of appellant. Further, the evidence indicates that the pat-down search of appellant began no more than five minutes after the officers initiated the stop and first saw the firearm, before Officer Edmonds had finished issuing a citation for the offense which provided the basis for the stop, and before Edmonds began his consensual search of the car. See Menard, 95 F.3d at 11 (noting reasonableness of fear of officer conducting consent search of car in which armed suspected drug trafficker was a passenger that vehicle's other occupants, if armed, could pose safety threat if search revealed contraband).

Under the standards set out in Sakyi, we hold that the totality of the circumstances provided the officers with the reasonable suspicion necessary to frisk appellant for weapons.

Therefore, the trial court did not err in denying appellant's motion to suppress and convicting him for violating Code § 18.2-248.

Because the evidence supports the trial court's finding that the officers had reasonable, articulable suspicion to justify the search, we affirm appellant's conviction.

<u>Affirmed.</u>