COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Frank and Humphreys
Argued at Richmond, Virginia


ROBERT LOWE, S/K/A
 ROBERT S. LOWE
                                         OPINION BY
v.   Record No. 2301-99-2           JUDGE ROBERT P. FRANK
                                       NOVEMBER 7, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    Gary A. Hicks, Judge

          J. Kelly Haley for appellant.

          John H. McLees, Jr., Senior Assistant
          Attorney General (Mark L. Earley, Attorney
          General, on brief), for appellee.


     Robert S. Lowe (appellant) was convicted in a bench trial

of possession of marijuana in violation of Code § 18.2-250.1.

On appeal, he contends the trial court erred in failing to grant

his motion to suppress based on his contention that the pat-down

search was initiated without reasonable suspicion that he was

armed and dangerous.  For the reasons that follow, we affirm the

conviction.

                    I.  BACKGROUND

     Henrico Police Officer Boteler stopped a car driven by

appellant at approximately 1:00 p.m. on November 8, 1998,

because the car had a rejection sticker displayed on its

windshield.  Three passengers were in the car.  When the officer

asked appellant for his driver's license, appellant responded he did not have it in his possession.  A license check revealed that the license plates on the car did not match the vehicle.  In order to investigate, and because she smelled an odor of alcohol on appellant, Boteler asked appellant to get out of the car, which he did.  She gave him a field sobriety test, which he passed.  She then issued him a summons for not having his operator's license in his possession and for an improper registration.  At that point, appellant was then free to go.

Boteler then asked appellant if he would consent to a search of his car, and he did so.  The three passengers got out and stood some distance away with another officer who arrived as backup while Boteler searched the car.

Inside a down jacket in the back seat, Boteler found a plastic bag containing a "large amount" of marijuana.[1]  She told the four occupants of the car what she found.  When she did so, one of the passengers, Ferrin, told her the marijuana was his and none of the others knew anything about it.  At that point, appellant "became very agitated with Mr. Ferrin and wanted to know what he had, what was he doing with it."  It was clear he was angry with Ferrin, and their voices were raised to the point where they "weren't quite yelling at each other."  Boteler was putting handcuffs on Ferrin in order to arrest him for

_____

[1] The record does not reveal the amount.

possession of the marijuana. She was standing between appellant and Ferrin. The officers detained appellant and the other occupants in order to investigate what Boteler had found in the car.

The officers had a total of three sets of handcuffs between them, so they handcuffed appellant and one other subject, in addition to Ferrin, whom they had arrested. Boteler told appellant he was not under arrest and that she was investigating what she had found in the car. Appellant did not make any threatening movements toward Boteler, and she did not observe any suspicious bulges on his person. Nevertheless, there were four subjects, only three of whom were handcuffed, and only two officers. Appellant had been drinking, and he and Ferrin were quite agitated with each other. Boteler was standing between the two. In her words, "I wasn't sure what I had." She told appellant she would be patting him down for her safety. Appellant was wearing a long shirt that hung below his waist.

Near appellant's belt buckle, Boteler felt a hard bulge. When she retrieved it, it proved to be a pipe containing marijuana. Appellant was arrested for possession of marijuana.

Appellant moved to suppress the marijuana seized as a result of the pat-down. The trial court denied the motion, finding that the officer properly patted down appellant for her safety. Appellant was convicted of possession of marijuana.

## II.  ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989) (citations omitted).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citation omitted).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996) (citation omitted).  "[O]n appeal, appellant carries the burden to show . . . that the denial of a motion to suppress constitute[d] reversible error."  Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

An officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot and the person subjected to the search may be armed and dangerous.  See James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citations omitted).  The authority to conduct a pat-down search does not follow automatically from the authority to effectuate an investigative stop.  See Williams v. Commonwealth, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987) (citations omitted).  "Only where the officer can 'point to particular facts from which [the officer] reasonably inferred that the individual was armed and dangerous' is he justified in searching for weapons."  Id. at 66-67, 354 S.E.2d at 86 (citation omitted).  "In deciding whether to make a stop or effect a pat-down search, an officer is 'entitled to rely upon "the totality of the circumstances--the whole picture."'"  Peguese v. Commonwealth, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (en banc) (citation omitted).

> The totality of the circumstances includes "the character of the offense." Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987)).  In Williams, this Court held that "suspicion of narcotics possession and distribution . . . gives rise to an inference of dangerousness."  Id. (emphasis added).  The officers in Williams had no information that Williams was violent or armed.  The protective pat-down search was upheld because it was reasonable "in light of the fact that [the officers] had a reasonable suspicion that Williams was

> presently engaged in narcotics
> distribution." Id.

Id. at 351-52, 451 S.E.2d at 413.

The "generalized risk to officer safety," which permits officers "to order occupants to exit a lawfully stopped vehicle," is insufficient "to justify a routine 'pat-down' of all passengers as a matter of course." United States v. Sakyi, 160 F.3d 164, 168-69 (4th Cir. 1998).

Although Sakyi involved drug paraphernalia, the Fourth Circuit held that a reasonable, articulable suspicion of the presence of drugs gave rise to a concern for the presence of guns, which, "in the absence of factors allaying [the officer's] safety concerns," permitted the officer to "pat them down briefly for weapons to ensure the officer's safety and the safety of others." Id. at 169. In so holding, the Fourth Circuit observed that when drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect. See id. The occupants are in the restricted space of the vehicle, presumably by choice and presumably on a common mission. See id.

In the instant case, viewing the evidence in the light most favorable to the Commonwealth, we have a case where a large amount of marijuana had been found in the coat pocket. Unlike Sakyi, where the officer only believed drugs were in the car,

Boteler actually found drugs.  Four suspects were being detained by only two officers.  Even when the second officer arrived, the officers still were outnumbered.  See Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983) (noting that, if officer had reasonable grounds to fear for his safety, mere increase in the number of officers at the scene is insufficient as matter of law to dispel that fear).

Based on the totality of the circumstances, we find that Officer Boteler had reason to fear for her safety when she frisked appellant.  Appellant's bulky shirt prevented her from detecting any hidden weapons.  Appellant had no operator's license, and the license plates were registered to a different vehicle.  A large quantity of drugs had been found in the car.  She was standing between appellant and Ferrin while the two were angry and agitated with each other.  She and another officer were outnumbered by the four suspects.  With only three pairs of handcuffs, one suspect had not been restrained.  Because Ferrin was under arrest and the investigation was not yet complete, Boteler necessarily had to devote her attention to matters other than appellant's potentially explosive conduct.  Any violence he might direct against Ferrin could injure Boteler because she was required to protect Ferrin and because she was standing between the two men.  These circumstances justified the pat-down of appellant.

Appellant cites Sakyi and argues that the presence of drugs in a car can justify a pat-down of all its occupants only when "suspicion is not readily attributed to any particular person in the vehicle."  See Sakyi, 160 F.3d at 169.  Because Ferrin claimed sole possession of the drugs found in the back seat, appellant argues Boteler had to accept Ferrin's statement at face value and had no basis for patting down appellant.  Under the Sakyi analysis, appellant argues that Ferrin's admission of ownership allayed the officer's safety concerns.

Appellant incorrectly presupposes that the police officer is bound by Ferrin's admission.  To the contrary, the officer was not obligated to accept Ferrin's statement of ownership. For the officer to have done so and dispensed with further investigation would have been a dereliction of duty.

In Logan v. Commonwealth, 29 Va. App. 353, 512 S.E.2d 160 (1999), the police were confronted with a similar situation.  As one of the officers approached the vehicle in which Logan was a passenger, he saw a firearm in plain view in the middle of the dashboard.  See Logan, 29 Va. App. at 356, 512 S.E.2d at 161. Although the driver claimed ownership of the weapon, it was in plain view from outside the vehicle, and under the principles set forth in Sakyi, a reasonable officer was free to conclude that the weapon could have belonged to any of the vehicle's occupants.  See id. at 361-62, 512 S.E.2d at 164.  Similarly, despite Ferrin's admission, Boteler was free to conclude that

appellant and the passengers were involved with the large quantity of marijuana.

Under the standards set forth in <u>Sakyi</u>, we hold that the totality of the circumstances provided the officers with the reasonable suspicion necessary to frisk appellant for weapons. Therefore, the trial court did not err in denying appellant's motion to suppress and convicting him for possession of marijuana.

For these reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>