COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


TRAVIS WESLEY ANDREWS

                                              OPINION BY
v.    Record No. 2085-00-1        JUDGE JEAN HARRISON CLEMENTS
                                          FEBRUARY 12, 2002
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                   Westbrook J. Parker, Judge

           (Michael P. Jones, on brief), for appellant.
           Appellant submitting on brief.

           Michael T. Judge, Assistant Attorney General
           (Randolph A. Beales, Attorney General, on
           brief), for appellee.


     Travis Wesley Andrews was convicted in a bench trial of
robbery, in violation of Code § 18.2-58, abduction, in violation
of Code § 18.2-48, two counts of use of a firearm during the
commission of a felony, in violation of Code § 18.2-53.1,
possession of a firearm by a convicted felon, in violation of
Code § 18.2-308.2, resisting arrest, in violation of Code
§ 18.2-460, and carrying a concealed weapon, in violation of Code
§ 18.2-308(A).  On appeal, Andrews contends (1) the trial court
erred in denying his motion to suppress the gun as the product of
an illegal search and seizure and (2) he was denied due process
of law because, after successfully challenging his initial
convictions, he was prosecuted on retrial for two additional
charges that were known at the time of the original prosecution.
For the reasons that follow, we affirm the convictions.

## I.  BACKGROUND

### A.  Factual Background Relating to Motion to Suppress

We view the evidence relevant to the motion to suppress and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party prevailing below.  See Weathers v. Commonwealth, 32 Va. App. 652, 656, 529 S.E.2d 847, 849 (2000).  So viewed, the evidence established that, on the night of January 13, 1996, Lieutenant Larry Wilson, a fourteen-year police veteran who commanded the special investigations unit of the Suffolk City Police Department, was in charge of a selective enforcement detail working in a residential, racially mixed area of Suffolk known as College Square.  Wilson testified at the suppression hearing that the detail of six officers was working in the College Square area because several armed robberies of food-delivery drivers had taken place there in the prior months.  The most recent of those robberies, reportedly committed by several young African-American males acting in concert, had occurred on January 11, 1996.[1]

---

[1] The majority of the convictions that are the subject of this appeal involve the commission of this crime.

At approximately 8:45 p.m., patrolling the College Square area in an unmarked police car behind two marked police cars, Wilson observed three young African-American males walking down Brookwood Drive toward the police vehicles.[2] The two marked police cars stopped, and uniformed officers got out of those cars and approached the three individuals. Two of the individuals stopped to talk to the officers, but the third, Andrews, continued walking down the street without conversing with the officers or looking back at them. Wilson testified that he "thought that was somewhat odd that [Andrews], out of the group of three, would continue to walk."

When Andrews reached Wilson's car, Officer John DeBusk, with whom Wilson was patrolling, asked Andrews if he could talk to him. Andrews continued walking past the car without responding. Wilson then got out of the car and, walking "to him at an angle," approached Andrews from the front. DeBusk, who followed Wilson from the car, initially remained behind and to the side of Wilson during the encounter. Upon Wilson's approach, Andrews stopped walking and Wilson engaged him in conversation. Wilson testified that, in approaching Andrews, he did not "ask [Andrews] to stop" or "place [his] hands on him in any way."

---

[2] That portion of Brookwood Drive had no sidewalks.

Wilson, who was in plainclothes with his badge displayed, identified himself as a police officer and asked Andrews his name.  Andrews, who was carrying a small cassette player and a tape in his hand, replied that his name was Travis Morton.  Asked by Wilson where he lived, Andrews pointed to a duplex farther down the street but could not identify the numerical address, indicating he had been living there only a short time with his cousin.  When asked again where he lived, Andrews did not respond.  Asked how old he was, Andrews said he was eighteen.  Wilson testified that Andrews "looked extremely young" and "did not appear to be eighteen."

While talking to Andrews, Wilson noticed that Andrews "had something extremely heavy in the center pocket" of his jacket.  According to Wilson, Andrews appeared, despite having the cassette player and tape in his hand, to be trying to support the object against his body so it would not hang down in the pocket.  Wilson testified that, when not supported, the item moved forward in the pocket and was noticeably heavy.

Wilson stated that, based on Andrews' suspicious conduct, including his leaving his companions behind when they stopped to talk with the police, his trying to support the object in his pocket to make it less noticeable, and his dubious responses to the questions posed about his residence and age, in conjunction with the noticeably heavy weight of the object in Andrews' pocket, he "felt [Andrews] had a weapon" in his pocket.  Concerned for his safety, Wilson asked Andrews "if he had any knives, guns, or hand grenades on his person" and "told him to place his hands out to his sides."  Andrews stated that Wilson

was not going to search him, and Wilson agreed, explaining that he was going to "only pat him down for weapons." Andrews extended his arms to his sides. Wilson "reached directly for the center pocket," touched the outside of it, and "knew right away that it contained a gun." He informed DeBusk that he had located a gun, and the two officers escorted Andrews to the front of the police car. After directing Andrews to place his hands on the hood of the car, Wilson removed a fully loaded .22 caliber handgun with a sawed-off barrel from the center pocket. Wilson then placed Andrews under arrest for possession of a concealed weapon. Once in custody, Andrews gave the officers his correct name and informed them he was only sixteen years old.

Andrews testified at the suppression hearing that he kept walking when first approached by the uniformed police officers because they asked to speak solely with one of his companions. Andrews further testified that a plainclothes officer subsequently approached him from the front with another plainclothes officer not "too far behind." Andrews stated that he stopped initially and the first plainclothes officer asked if he could search him. Andrews asked the officer why he wanted to search him and continued walking past the officer. According to Andrews, the second plainclothes officer then asked if he could search Andrews. Andrews told the officer he had no reason to search him and kept walking. Andrews testified that the second officer then reached for the center pocket of his jacket.

## B. Procedural Background

In 1996, Andrews was convicted of robbery, use of a firearm in the commission of a felony, possession of a firearm by a

convicted felon, carrying a concealed weapon, resisting arrest, and possession of a handgun by a minor.[3] He was sentenced to thirty-one years in prison, with twenty years suspended on certain terms and conditions. Andrews' convictions were subsequently vacated in accordance, apparently, with our decision in Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998), aff'd per curiam, 258 Va. 1, 516 S.E.2d 219 (1999).[4]

On May 26, 2000, Andrews was retried for the same criminal conduct upon which the 1996 convictions were based. Prior to trial, Andrews moved to suppress the gun as the product of an illegal search and seizure. The trial court denied the motion, finding that Officer Wilson had reasonable suspicion sufficient to justify an investigative stop and pat-down search of Andrews. Andrews was subsequently tried and convicted of robbery, abduction, two counts of use of a firearm during the commission of a felony, possession of a firearm by a convicted felon, resisting arrest, and carrying a concealed weapon. The trial court imposed a total sentence of forty-five years in prison, twenty-nine years of which were suspended on certain terms and conditions. This appeal followed.

## II. MOTION TO SUPPRESS

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that

---

[3] A judge of this Court denied Andrews' petition for appeal of these convictions in Andrews v. Commonwealth, Record No. 2703-96-1 (July 1, 1997).

[4] While both parties indicate this to be the case in their respective briefs on appeal, the record fails to show why Andrews' earlier convictions were vacated.

th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed de novo on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

Andrews contends he was seized by Officers Wilson and DeBusk when they approached him from the front and started asking him questions. That seizure, he further contends, violated his Fourth Amendment rights because it was not based on a reasonable, articulable suspicion that he was engaged in criminal activity or armed and dangerous. Thus, he concludes, the trial court erred in refusing to suppress the gun, a product of the unlawful seizure.

The Commonwealth contends that the encounter was initially

consensual and that Andrews was not seized until Officer Wilson patted him down.  By then, the Commonwealth argues, Wilson had a reasonable, articulable suspicion that Andrews was carrying a concealed weapon and, thus, was engaged in criminal activity and armed and dangerous.  Hence, the Commonwealth concludes, the limited pat-down search by Wilson was proper under the circumstances.  We agree with the Commonwealth.

Police-citizen confrontations generally fall into one of three categories.  First, there are consensual encounters which do not implicate the Fourth Amendment.  Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot.  Finally, there are "highly intrusive,

full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citations omitted).

> A consensual encounter occurs when police officers approach persons in public places to ask them questions, provided a reasonable person would understand that he or she could refuse to cooperate. Such encounters need not be predicated on any suspicion of the person's involvement in wrongdoing, and remain consensual as long as the citizen voluntarily cooperates with the police.

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (internal quotations and citations omitted).

Conversely,

> [a] person is "seized" within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe that he was not free to leave the scene of an encounter with the police. Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's freedom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards.

McCain v. Commonwealth, 261 Va. 483, 490-91, 545 S.E.2d 541, 545 (2001) (citations omitted). Circumstances that may be indicative of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

Here, Officer Wilson's confrontation with Andrews began as a consensual encounter. Wilson approached Andrews in a public

place to ask him questions. He made no show of force or authority that would cause a reasonable person to believe that he or she was compelled to remain at the scene of the encounter or otherwise cooperate with the police. Andrews, who had walked away from encounters with the uniformed officers and Officer DeBusk without speaking to them, stopped and spoke with Wilson. Wilson did not physically restrain Andrews, command him to stop, or block his departure. Likewise, he displayed no weapon. Furthermore, DeBusk did not join Wilson in confronting Andrews, but stayed behind Wilson during the encounter until informed that Andrews had a weapon. Thus, we conclude Andrews was not "seized" within the meaning of the Fourth Amendment when Wilson first approached him and started asking him questions.

The trial court found that Wilson's pat-down search of Andrews for weapons constituted a valid investigatory stop and limited search for weapons pursuant to Terry v. Ohio, 392 U.S. 1 (1968). The Commonwealth does not challenge the trial court's determination that Andrews was seized at the time of the pat-down search. We, therefore, assume, without finding, that the encounter between Wilson and Andrews lost its consensual nature when Wilson conducted the pat-down search for weapons. Accordingly, we must determine whether Wilson had a reasonable, articulable suspicion that Andrews was engaged in wrongdoing and was armed and dangerous when Wilson patted him down for weapons. See Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000) (holding that a police officer "may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe

criminal activity may be afoot and the person subjected to the search may be armed and dangerous").

In determining whether a police officer had reasonable suspicion to justify an investigatory stop and pat-down search, we must view the circumstances "available to the officer" at the time of the seizure and search through the eyes of a reasonable person. <u>Christian v. Commonwealth</u>, 33 Va. App. 704, 711-12, 536 S.E.2d 477, 481 (2000) (<u>en</u> <u>banc</u>). However, "[i]n deciding whether to make a stop or effect a pat-down search, an officer is 'entitled to rely upon "the totality of the circumstances—the whole picture."'" <u>Peguese v. Commonwealth</u>, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (<u>en</u> <u>banc</u>) (quoting <u>Lansdown v. Commonwealth</u>, 226 Va. 204, 212, 308 S.E.2d 106, 112 (1983) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981))). The officer is also entitled "to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." <u>James v. Commonwealth</u>, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted); <u>see also</u> <u>Christian</u>, 33 Va. App. at 714, 536 S.E.2d at 482 (noting that "the unique perspective of a police officer trained and experienced in the detection of crime" is a relevant factor in judging the reasonableness of police conduct). Additionally, "the officer does not have to be absolutely certain that the person is armed. If he reasonably believes that the individual might be armed, the search is warranted to protect himself or others who may be in danger." <u>Simmons v. Commonwealth</u>, 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977). Furthermore, as the Supreme Court noted in <u>Illinois v.</u>

<u>Wardlow</u>, 528 U.S. 119, 124-25 (2000):

> In reviewing the propriety of an officer's
> conduct, courts do not have available
> empirical studies dealing with inferences
> drawn from suspicious behavior, and we cannot
> reasonably demand scientific certainty from
> judges or law enforcement officers where none
> exists.  Thus, the determination of
> reasonable suspicion must be based on
> commonsense judgments and inferences about
> human behavior.

Here, Wilson observed Andrews walk away from his companions when they stopped to speak with the uniformed officers.  Wilson, a fourteen-year police veteran, thought it "somewhat odd" that Andrews would leave his companions behind.  Then, in responding to Wilson's questions, Andrews did not provide his address and gave the officer an obviously incorrect age.  Moreover, Wilson observed that Andrews had a heavy object in the center pocket of his jacket and appeared to be trying to conceal it from the officer by supporting it against his body to keep it from hanging down in the pocket.  Based on Andrews' suspicious conduct and the apparent weight of the object in the pocket of Andrews' jacket, Wilson believed that the object in the jacket was a weapon.  Concerned for his safety, he patted Andrews down.

Based on the totality of the circumstances and in light of Wilson's observations and his training and experience as a police officer, we find that Wilson had reasonable cause to believe that Andrews might be carrying a concealed weapon and that the investigatory stop and limited pat-down search for weapons were warranted to protect himself and others who might be in danger.  We conclude, therefore, that, because the circumstances provided Wilson an objective basis for suspecting Andrews was engaged in

criminal activity and that he was armed and dangerous, his seizure of Andrews and his limited pat-down search of Andrews for weapons were not in violation of Andrews' Fourth Amendment rights. Hence, the trial court did not err in denying Andrews' motion to suppress.

### III. DUE PROCESS

Andrews contends he was denied due process of law on the grounds that, after he successfully attacked his initial convictions, the Commonwealth pursued additional charges on retrial that were known to the Commonwealth at the time of the original trial and that were based on the same conduct upon which the original charges and convictions were based. Andrews argues that, in pursuing the additional charges—abduction and use of a firearm in the commission of the abduction—the Commonwealth sought "to punish [him] for pursing [sic] his right of appeal, and thus denied [him] of his due process rights as guaranteed by the Fourteenth Amendment." Thus, Andrews concludes, the abduction conviction and the use of a firearm conviction associated with the abduction should be reversed, "in the ends of justice."

The Commonwealth contends this claim is procedurally barred on appeal because it was not preserved for appeal in accordance with Rule 5A:18. We agree with the Commonwealth.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was

stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."). The purpose of the rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals. See Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991). "Rule 5A:18 applies to bar even constitutional claims." Ohree, 26 Va. App. at 308, 494 S.E.2d at 488.

Here, Andrews did not raise before the trial court the claim he presents to us. He neither moved to dismiss the subject indictments on the ground that prosecution of those charges would violate his due process rights nor made such an objection at trial. Likewise, he sought no such relief from the trial court following trial. Thus, the Commonwealth never had the opportunity to respond at the trial level to Andrews' assertion of prosecutorial vindictiveness, and the trial court never had the opportunity to consider, much less resolve, the issue.

Moreover, our review of the record in this case does not reveal any reason to invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18. Andrews had ample opportunity to bring his due process claim to the attention of the trial court but failed to do so. See Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) (holding that Rule 5A:18 bars consideration of an issue where defendant had the opportunity to raise that issue at trial but did not do so). Additionally,

Andrews failed to affirmatively demonstrate that a "miscarriage of justice has occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred."). Because the record in this case offers us no basis for determining why the Commonwealth did not initially prosecute Andrews for abduction and use of a firearm in the commission of abduction or why the Commonwealth increased the number of charges on retrial, we can only speculate as to whether the Commonwealth had valid, nonvindictive reasons for pursuing the additional charges or whether a miscarriage of justice has occurred. See Hardwick v. Doolittle, 558 F.2d 292, 301 (5th Cir. 1977), cert. denied, 434 U.S. 1049 (1978) (holding that prosecutor can rebut a claim of prosecutorial vindictiveness by establishing that the reason for the increase in the number of charges was not to punish defendant for exercising his rights, and noting that there are any number of valid, nonvindictive reasons a prosecutor may have for increasing the number of charges, including "mistake or oversight in the initial action, a different approach to prosecutorial duty by the successor prosecutor, or public demand for prosecution on the additional crimes allegedly committed"); see also Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992) (en banc) (holding that appellant is responsible for "ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly").

Thus, because Andrews "failed, without good cause," to raise

before the trial court the due process argument he makes on appeal and because he "has not proven that a manifest injustice resulted, we will not consider the merits of this argument on appeal." M. Morgan Cherry & Assocs. v. Cherry, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (2002). Compare, e.g., Allen v. Commonwealth, 36 Va. App. 334, 339, 549 S.E.2d 652, 654 (2001) (finding that consideration of the merits of a due process argument that was not made to trial court was warranted under the "ends of justice" exception to Rule 5A:18 because the record affirmatively established that, "under the facts and circumstances of [that] case," a manifest injustice had occurred).

Accordingly, we affirm Andrews' convictions.

Affirmed.