COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Annunziata and Senior Judge Willis
Argued at Alexandria, Virginia


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 2001-03-4            JUDGE ROSEMARIE ANNUNZIATA
JANUARY 30, 2004
DAWUD RASHEED RIGGINS



FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellant.

Matthew T. Foley for appellee.


The Commonwealth of Virginia appeals the order of the trial court granting Dawud

Rasheed Riggins's motion to suppress evidence.  For the reasons that follow, we affirm.

I.  Background

On appeal of a trial court's ruling on a motion to suppress, we review the evidence in the

light most favorable to the prevailing party below, together with all reasonable inferences that

may be drawn.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48

(1991).  That principle requires us to discard the evidence of the Commonwealth in conflict with

Riggins's evidence and regard as true all evidence favorable to him.  See Watkins v.

Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998).  So viewed, the record

establishes that on January 20, 2003, Officer John Marsicano, a member of the Arlington County

Police Department's tactical unit, was on duty in the Pentagon Row shopping center looking for

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

stolen cars. Marsicano was "running vehicle tags" on parked cars in the center's parking lot, relaying the tag numbers to Officer Albert Kim who checked the numbers in a computer database.

At approximately 1:20 p.m. Marsicano asked Kim to check a Maryland license plate numbered JEZ-455. Kim reported that the tag returned to a stolen vehicle. Marsciano notified other members of the tactical unit, and at least four other officers responded to the call: Kim, Aaron Tingle, David Giroux, and White.

While Marsicano waited for back-up officers to arrive, he saw a male and female passenger exit the car in front of the Sprint store in Pentagon Row. Riggins was one of those individuals. He exited from the front passenger seat, and the other passenger exited from the rear seat. They both entered the Sprint store.

The driver of the vehicle then "circled the [parking] lot looking" for a parking space. Finding none, the driver stopped the car in a "no parking" zone in the fire lane of the shopping center. Officers Mariscano and Tingle approached the vehicle, one from the front, and the other from the rear, "preventing rear movement" of the car. Marsicano and Tingle identified themselves as police officers and took the driver into custody. Marsicano searched the driver and found a loaded handgun in the driver's right front pocket. He also found "seven bags of marijuana" on the driver's person. Marsicano's search of the vehicle disclosed a set of stolen license plates under the front seat. He reported the presence of the loaded handgun to the other officers responding to the area and radioed a description of the two passengers to Giroux.

Marsciano explained that "after [he and Tingle] stopped the vehicle and took the driver into custody, I needed [Giroux and Kim] to look for . . . the other passenger[s] to make sure they don't try to come back to the vehicle as we're dealing with the driver and the loaded handgun."

Marsicano asked the officers responding to his call for back-up to stop the two passengers before they returned to the car.

Giroux and Kim arrived approximately eleven to twelve minutes after receiving Marsicano's first call. Giroux, who was in plain clothes, started walking towards the Sprint store. He could see the driver of the car, in handcuffs about forty to fifty yards away, blocked by police vehicles. As he approached the store, Riggins and his female companion came out, "walked into the middle of the rows of parked cars[,] and [began] to look around as if they're looking for somebody." Two other officers joined Giroux, and the three stopped Riggins and his companion as they walked through the lot. One of the officers challenged Riggins at gunpoint while Giroux placed Riggins in handcuffs and moved him between parked cars in the interest of safety. White apprehended Riggins's companion.

Riggins asked Giroux why he was being stopped. While Giroux explained his reasons, he "began to pat [Riggins] down for [his] safety due to the information [he] received about the driver, . . . [who had] a loaded handgun in his possession." During the pat-down, Giroux felt a "large spongy bulge in his jacket pocket," but, despite his suspicion, he "could not immediately tell what it was."

When Giroux asked Riggins to identify the contents of his pocket, Riggins replied that it was not his jacket. When Giroux asked "if it's okay [if he looked] in [the] pocket," Riggins acceded to the request. Giroux there discovered 34 bags of marijuana, individually wrapped, and a vial of PCP. Based on this incriminating evidence, Riggins was placed under arrest and was subsequently indicted for possession of marijuana with intent to distribute in violation of Code § 18.2-248.1, and possession of PCP in violation of Code § 18.2-250. The evidence disclosed by the search was suppressed after a hearing held on July 24, 2003. This appeal followed.

II.  Analysis

A.  Standard of Review

The Commonwealth has the "burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment Rights."  Lowe v. Commonwealth, 33 Va. App. 656, 660, 536 S.E.2d 454, 456 (2000).  Fourth Amendment search and seizure issues "involve questions of both law and fact and are reviewed *de novo* on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*).  However, we are bound by the trial court's findings of historical fact unless "'plainly wrong'" or without evidence to support them.  Reed v. Commonwealth, 36 Va. App. 260, 266, 549 S.E.2d 616, 619 (2001) (quoting McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1).

B.  Legality of the Stop and Frisk

Generally, searches and seizures conducted without a warrant are presumptively unconstitutional.  Minnesota v. Dickerson, 508 U.S. 366, 372 (1993).  However, a police officer may constitutionally conduct a brief, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity may be afoot.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  An unparticularized suspicion or hunch is not sufficient.  Id. at 27.  If he reasonably suspects the person stopped to be armed and dangerous, an officer may further conduct  "a carefully limited search of the outer clothing in an attempt to discover weapons which might be used to assault him."  Id. at 30.

In reviewing whether circumstances support an officer's suspicion, we view them "at the time of the seizure . . . through the eyes of a reasonable person."  Andrews v. Commonwealth, 37 Va. App. 479, 491, 559 S.E.2d 401, 407 (2002).  "The validity of a seizure 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken.'"

Hamlin v. Commonwealth, 33 Va. App. 494, 499, 534 S.E.2d 363, 365 (2000) (quoting

Maryland v. Macon, 472 U.S. 463, 470-71 (1985)) (other quotation and citation omitted).

Furthermore, officers are "entitled to rely on information communicated to [them] by [their]

fellow law enforcement officers" in developing reasonable suspicion. Reed, 36 Va. App. at 266,

549 S.E.2d at 619.

In sum, "the essence of all that has been written is that the totality of the circumstances—

the whole picture—must be taken into account." United States v. Cortez, 449 U.S. 411, 417

(1981). A stop and frisk is therefore justified where, based upon the totality of circumstances,

"the detaining officers . . . have a particularized and objective basis for suspecting the particular

person stopped of criminal activity," id.; see also Whitfield v. Commonwealth, 265 Va. 358, 361,

576 S.E.2d 463, 465 (2003), and of being armed and dangerous, Phillips v. Commonwealth, 17

Va. App. 27, 30, 434 S.E.2d 918, 920 (1993). The "totality of the circumstances" rule is meant

to strike a "balance between the public interest and the individual's right to personal security free

from arbitrary interference by law officers." United States v. Brignoni-Ponce, 422 U.S. 873, 878

(1975).

The Commonwealth argues that both the Terry stop and the frisk of Riggins were

constitutionally permissible because the police reasonably suspected that Riggins was involved

in criminal activity and armed and dangerous. Assuming, without deciding, that the police

justifiably detained Riggins, the inquiry thus becomes whether the totality of the evidence

demonstrates that, at the time Riggins was frisked, the police had reason to believe that he was

armed and dangerous. Terry, 392 U.S. at 30; Phillips, 17 Va. App. at 30, 434 S.E.2d at 920. The

Commonwealth argues that two bases provided an objectively reasonable suspicion that Riggins

may be armed and dangerous: (1) the fact that the crime the police were investigating was a

serious felony; and (2) the fact that a loaded handgun was discovered on the driver of the vehicle

in which Riggins was a passenger.[1] We disagree because no specific facts link Riggins to either the theft of the car or the driver's possession of a gun.

In support of its contention that the stolen car and the discovery of the handgun on the driver implicate Riggins, the Commonwealth argues that "it is reasonable to conclude that all occupants of the vehicle are suspect."[2] Bolstering this proposition, the Commonwealth cites to this Court's decision in Logan v. Commonwealth, 29 Va. App. 353, 512 S.E.2d 160 (1999), where we found that the occupants in a vehicle "are in a restricted space . . . presumably by choice and presumably on a common mission."[3] Id. at 360, 512 S.E.2d at 163. However, we find Logan distinguishable from the instant case.

In Logan, police officers stopped a vehicle because it did not display a valid inspection sticker. Id. at 356, 512 S.E.2d at 161. When an officer approached the vehicle, he observed a handgun "in the middle of the dashboard" in plain view. Id. He ordered the driver and the passengers out of the vehicle "for officer safety." Id. The passengers, the officer noted, acted suspiciously once they exited the vehicle, moving around and making eye contact with each other. Id. After the driver was secured in a patrol car, the passengers were frisked even though

---

[1] The Commonwealth does not posit that the discovery of drugs on the driver provided a reasonable belief that Riggins was armed and dangerous.

[2] To the extent the Commonwealth invokes an "automatic companion rule" to justify the search, we note that, although some courts have adopted such a rule, see, e.g., United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir. 1971); United States v. Poms, 484 F.2d 919, 922 (4th Cir. 1973), others make clear that the "totality of circumstances" test does not support it. See, e.g., United States v. Flett, 806 F.2d 823, 827 (8th Cir. 1986); United States v. Bell, 762 F.2d 495, 498 (6th Cir. 1985); 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 262 (3d. ed. 1996) ("Although on occasion the [automatic companion rule announced] in Berryhill has been taken literally, it is to be doubted whether such a broad rule is justified.").

[3] We note that the Commonwealth cites Logan only to support its position that the detention of Riggins was lawful. The Logan Court was not concerned, however, with the legality of the detention; rather, the Court evaluated the legality of the subsequent frisk. Logan, 29 Va. App. at 359, 512 S.E.2d at 163. For this reason, we find Logan relevant to the instant appeal and address it squarely.

the driver admitted to ownership of the handgun.  Id. at 357, 512 S.E.2d at 162.  When an officer frisked Logan, he discovered crack cocaine in one of his pockets.  Id. at 358, 512 S.E.2d at 162. Logan moved to suppress the evidence.  Id.  The trial court denied the suppression motion, and we affirmed.  Id.  Our affirmance was rooted in the reasonableness of the officer's conclusion that the weapon in plain view could have belonged to any of the vehicle occupants and that the officers therefore reasonably feared for their own safety.  Id. at 361, 512 S.E.2d at 164.  It was also based on evidence of other circumstances justifying the search.  We also took cognizance of the Fourth Circuit's observation in United States v. Sakyi, 160 F.3d 164 (4th Cir. 1998), that, "'when drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect.  They are in the restricted space of the vehicle presumably by choice and presumably on a common mission.'"  Logan, 29 Va. App. at 360-61, 512 S.E.2d at 163 (quoting Sakyi, 160 F.3d at 169).  Finally, we noted the significance of the passengers' suspicious behavior upon their exit of the vehicle, which "provided additional support" for the pat-down.  Id. at 362, 512 S.E.2d at 164.  Thus, considering the totality of the circumstances, we upheld the frisk of the defendant. Id.

Unlike the circumstances in Logan, here, suspicion that offenses had been committed is "readily attributable to [a] particular person."  Id. at 360, 512 S.E.2d at 163.  That person was the driver.  The Commonwealth cannot point to any evidence in the case that tends to establish that Riggins and the driver were on a "common mission."  The gun was found in the driver's right front pocket.  The stolen license plates were likewise found under the front seat, out of the plain view of the occupants of the vehicle.  Nothing in the record even remotely implicates Riggins in the theft of the vehicle or supports a conclusion that he knew it was stolen.  Cf. Peguese v. Commonwealth, 19 Va. App. 349, 352, 451 S.E.2d 412, 414 (1994) (*en banc*) (upholding frisk of

Peguese where police observed him together with another individual who made a suspected drug buy in Peguese's presence). Nor is there any identifiable nexus between the presence of the handgun on the driver's person and Riggins's knowledge of its existence. Furthermore, when arrested, Riggins was a pedestrian and had not been in the "restricted space" of the automobile for approximately ten minutes, unlike the defendant in Sakyi. On this record, we cannot conclude that a reasonable, articulable suspicion that Riggins was engaged in criminal activity underlay and justified the frisk.[4]

We also note that none of the circumstances in other cases imputing suspicion to the companion of a legally detained suspect are present here. First, there is no indication that Riggins had invalid identification. Cf. Sakyi, 160 F.3d at 169; Lansdown v. Commonwealth, 226 Va. 204, 211, 308 S.E.2d 106, 111 (1983). Second, the police officers were not outnumbered; here, they outnumbered the suspects by at least five to three. Cf. Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 128 (1998) (*en banc*); Logan, 29 Va. App. at 361, 512 S.E.2d at 164. Third, the encounter did not occur in a high crime area; rather, it occurred in the parking lot of a shopping mall. Cf. Sakyi, 160 F.3d at 169; Welshman, 28 Va. App. at 32, 502 S.E.2d at 128. Fourth, the events in the instant case occurred during the daytime in a busy mall parking lot, not at night or under poor lighting conditions. Cf. Lansdown, 226 Va. at 211, 308 S.E.2d at 111. Fifth, there is no indication that Riggins was wearing loose clothing capable of easily concealing a weapon. Cf. Sakyi, 160 F.3d at 169. Sixth, the record

---

[4] Unlike the recent Supreme Court case of Maryland v. Pringle, 124 S. Ct. 795 (2003), the Commonwealth does not contend, and the evidence does not support a conclusion, that the police had probable cause to arrest Riggins. In Pringle, the defendant moved to suppress his confession on the ground that it was obtained after he was unlawfully arrested. Pringle, 124 S. Ct. at 799. The Supreme Court held that probable cause supported the arrest and that the confession was therefore lawful. Id. at 802. Here, even if the police lawfully detained Riggins, under a Terry analysis additional facts must give rise to a reasonable suspicion that Riggins was armed and dangerous. Terry, 392 U.S. at 30. As stated *supra*, no such additional facts exist.

does not disclose that Riggins disobeyed police commands. Cf. Welshman, 28 Va. App. at 34, 502 S.E.2d at 129. Finally, Riggins was forty to fifty yards away from the driver of the vehicle. He was not, therefore, in the immediate vicinity of the arrestee, and there is no indication that he was "capable of accomplishing a harmful assault on the" officers present. Cf. United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir. 1971); United States v. Poms, 484 F.2d 919, 922 (4th Cir. 1973).

The absence of additional facts, as revealed above, constrains us to find that the Commonwealth failed to meet its burden proving that the warrantless detention and frisk of Riggins was constitutional. See Lowe, 33 Va. App. at 660, 536 S.E.2d at 456.[5] We, therefore, find that the police did not have a reasonable, articulable suspicion that Riggins was armed and dangerous. The frisk of his person was accordingly unconstitutional.

For the reasons stated, we affirm the decision of the trial court to grant Riggins's motion to suppress.

Affirmed.

---

[5] The Commonwealth does not argue that the seizure of the drugs found on Riggins was valid because he consented to it. In any event, we could not uphold the seizure on this ground because Riggins gave his consent after he was placed in handcuffs and after an illegal frisk. See Harris v. Commonwealth, 266 Va. 28, 34, 581 S.E.2d 206, 210 (2003).

Willis, J., dissenting.

I acknowledge the correct statement of controlling authorities set forth in the majority opinion. However, I find the stated circumstances confronting Officer Giroux sufficiently supportive of a reasonable suspicion that criminal activity was afoot and that Riggins was involved and a reasonable belief that Riggins might be armed and dangerous.

The car in which Riggins was a passenger was stolen. The driver was armed and possessed illegal drugs. In my view, ordinary experience and logic compel from these circumstances the suspicion that Riggins was involved in the theft and that, like his confederate, he was armed. An armed criminal is dangerous.

The majority accepts, without conceding, that Riggins's investigatory detention was lawful. I find that acceptance sound, albeit I do not harbor the reservation. The brief frisk of Riggins's outer clothing imposed no intrusion on his privacy significantly greater than his detention. The frisk served a reasonable purpose, the protection not only of the officers, but also of persons in the shopping center. Had the officers failed to employ this reasonable prophylaxis, the consequences could have been tragic.

I would reverse the judgment of the trial court and order denial of the motion to suppress.