COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

CASSELL CLARK FITZGERALD, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 0152-14-3         JUDGE ROBERT J. HUMPHREYS
                                     NOVEMBER 10, 2015
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

M. Lee Smallwood, II, Senior Assistant Public Defender, for
appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Cassell Clark Fitzgerald, Jr. ("Fitzgerald") appeals the ruling of the Circuit Court of the

City of Danville (the "circuit court") denying his motion to suppress the evidence that was

recovered pursuant to a weapons frisk.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the

accused has met his burden to show that the trial court's ruling, when the evidence is viewed in

the light most favorable to the Commonwealth, was reversible error." Roberts v.

Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is "bound by the

trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them

and we give due weight to the inferences drawn from those facts by resident judges and local law

enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261

(1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "However, we

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*).

Police-citizen confrontations generally fall into one of three categories. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869 (1992). First, there are consensual encounters which do not implicate the Fourth Amendment. Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). Second, there are brief investigatory stops, commonly referred to as Terry stops, which must be based upon "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect. Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173.

It is undisputed that the initial interaction between Officer Lancaster and Fitzgerald was a consensual encounter. Fitzgerald asserts that he became seized and the Fourth Amendment violation occurred when Officer Lancaster frisked him. See Walker v. Commonwealth, 42 Va. App. 782, 790, 595 S.E.2d 30, 34 (2004) (holding a seizure occurred when an officer "explained that he intended to pat down" a suspect because "at this point, a reasonable person would not believe he could ignore the officer's requests and walk away"). Pursuant to Terry, "[i]f a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263.

In addition to allowing brief investigatory detentions, Terry also held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating

at close range is armed and presently dangerous to the officer or to others," the officer may conduct a limited search of the suspect's outer clothing "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24. Such frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26. See also Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000) (holding that a police officer "may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot and the person subjected to the search may be armed and dangerous").

Applying the above standards, and in consideration of the circumstances then present, we conclude that at the time of Fitzgerald's seizure, the officers had a reasonable articulable suspicion that Fitzgerald possessed a concealed weapon, which also rendered him potentially armed and dangerous.

This Court has held that officers possessed reasonable articulable suspicion that a defendant was armed to justify a weapons frisk in several cases with similar facts to the case at bar. In Andrews v. Commonwealth, 37 Va. App. 479, 492, 559 S.E.2d 401, 408 (2002), this Court determined the officers had reasonable suspicion that the defendant possessed a concealed weapon given that they were in an area at night where several robberies had been reported in the past six months and the officer "observed that [the defendant] had a heavy object in the center pocket of his jacket and appeared to be trying to conceal it from the officer by supporting it against his body to keep it from hanging down in the pocket." We similarly held that officers had reasonable suspicion that a suspect had a concealed weapon, given that the encounter occurred late at night in an area known for drug trafficking, the defendant acted "furtively," and ignored several commands from the officers to stop moving his hands. Jones v. Commonwealth, 52 Va. App. 548, 552-54, 665 S.E.2d 261, 263-64 (2008). In Beasley v. Commonwealth, 60

Va. App. 381, 395-97, 728 S.E.2d 499, 506-07 (2012), we also concluded reasonable suspicion existed when the encounter occurred at night in an area known for "narcotics transactions and gun crimes," the defendant moved his hands in a "furtive manner," and continued to do so despite repeated directives from the officer to stop.

Similar to the circumstances in Andrews, Jones, and Beasley, the officers first encountered Fitzgerald at night in a high-crime area known for drugs and violence. Additionally, like the defendants in Jones and Beasley who continued to move their hands when directed by police to place their hands where they could be seen, when asked by Officer Lancaster to remove his hands from his pocket, Fitzgerald took his hands out initially, but then immediately put his hands back in his pockets. In further similarity to the officer in Andrews who directed the defendant to place his hands by his side because he believed the defendant may have had a weapon, Officer Landrum repeated his request that Fitzgerald remove his hands from his pocket "[be]cause he didn't know if [Fitzgerald] had a gun on him." Moreover, like the officer in Andrews who observed "a heavy object" in the pocket of his jacket and believed it was a weapon, Officer Lancaster could see "a bulge on the right side of the wind jacket" which was "pointed out more towards one end than the other, towards the jacket," which he believed to be a gun. In light of these circumstances, we find that Officer Lancaster had reasonable suspicion that Fitzgerald had a concealed weapon, and was therefore justified in detaining him to conduct a pat down.

"The purpose of [a Terry frisk] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972). Therefore, if the protective frisk goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry. Sibron v. New York, 392 U.S. 40, 65-66 (1968). During a Terry frisk, an officer may remove an item from a subject's pocket if the

- 4 -

officer reasonably believes that the object might be a weapon. Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983). Additionally, an officer may remove an item from a subject's pocket if the officer can identify the object as suspicious under the plain feel variation of the plain view doctrine. Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993). However, an item "may not be retrieved under the plain view doctrine unless it is 'immediately apparent' to the officer that the item is evidence of a crime." Grandison v. Commonwealth, 274 Va. 316, 320, 645 S.E.2d 298, 300 (2007) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)). To put it simply:

> The crux of any analysis of whether an officer exceeds the scope of a Terry "frisk" is simply whether the actions of the frisking officer go beyond the basic determination of whether a suspect is armed. If the officer's actions are reasonably calculated to determine whether the suspect possesses a weapon, then the pat down is constitutionally proper. Conversely, the officer exceeds the constitutional constraints of a Terry frisk if he is trying to determine, through his sense of touch, the nature or identity of an object he *knows cannot* be a weapon.

Bandy v. Commonwealth, 52 Va. App. 510, 521-22, 664 S.E.2d 519, 524 (2008) (emphasis added).

Fitzgerald claims that Officer Lancaster exceeded the proper scope of a pat-down search because he "manipulated" the gun by grabbing it during the frisk. However, "Dickerson does not stand for the principle that an officer may never squeeze, slide or manipulate items felt during a pat down." Bandy, 52 Va. App. at 521, 664 S.E.2d at 524. "The manipulation of an item under a suspect's clothing is only unlawful if the officer 'goes beyond what is necessary to determine if the suspect is armed.'" Id. (quoting Dickerson, 508 U.S. at 373).

In this case, Officer Lancaster's actions were reasonable to determine whether Fitzgerald possessed a weapon. First, Officer Lancaster touched the outside of Fitzgerald's jacket pocket, where he had observed the bulge, and felt the "rectangular type rail of a handgun." Officer

Lancaster testified that the object felt like "the top rail of a handgun, a semi-automatic handgun." Officer Lancaster further testified that "[he] reached up and went to pat it and it was a pat and then more of a grab." He explained, "At that point I could feel that metal that I knew to be a rail and that's when I grabbed it and I felt it was a weapon." Therefore, because Officer Lancaster immediately felt what he identified as a rail of a handgun, and only "grabbed" the object after he knew the object was the metal rail of a weapon, the seizure of the gun from Fitzgerald's pocket was lawful.[1]

Accordingly, we hold that the frisk of Fitzgerald was lawful because Officer Lancaster had reasonable, articulable suspicion that Fitzgerald had a concealed weapon, and, thus, was engaged in criminal activity and was armed and dangerous. Further, because Officer Lancaster immediately knew based on plain feel that the object in Fitzgerald's pocket was a gun, he was justified in seizing the weapon from Fitzgerald's pocket. Therefore, finding that the circuit court did not err in declining to suppress the evidence recovered from Fitzgerald's pocket, we affirm the circuit court's ruling.

Affirmed.

---

[1] We also note that after feeling the gun, Officer Lancaster grabbed Fitzgerald's right arm and reached to retrieve the gun when a struggle ensued. Fitzgerald was forced to the ground and Officer Lancaster was able to forcibly remove the firearm from Fitzgerald's grasp. This exchange resulted in Fitzgerald also being charged with assault and battery of a law enforcement officer. Thus, even if Fitzgerald's claim that Officer Lancaster violated his Fourth Amendment rights was successful, the evidence should not be suppressed. See Testa v. Commonwealth, 55 Va. App. 275, 283, 685 S.E.2d 213, 216-17 (2009) (holding that if a person "engages in new and distinct criminal acts during an allegedly unlawful police encounter, the exclusionary rule does not apply and evidence of the events constituting the new criminal activity . . . is admissible").