UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Clements

LELA WEIFORD

v.      Record No. 0311-18-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MARCH 5, 2019

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Walter J. Ford, Judge

(Charles E. Haden, on brief), for appellant.

(Kendall Bynum, Assistant City Attorney; Lola Rodriguez Perkins,
Senior Deputy City Attorney; Rachel E. Madden, Guardian *ad litem*
for the minor child; Riley Law, PLLC, on brief), for appellee.

Lela Weiford (mother) appeals the circuit court orders terminating her parental rights to her

seven children and approving the foster care goal of adoption.  Mother argues that the circuit court

erred by (1) approving the foster care goal of adoption because the City of Hampton Department of

Social Services (the Department) failed to prove that the goal of adoption was in the children's best

interests and that reasonable efforts were made to reunite the children with their parents and

(2) terminating mother's parental rights under Code § 16.1-283(C)(2) because the Department failed

to offer sufficient evidence to support the termination.  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

decision of the circuit court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Mother is the biological mother to seven children, M.W., X.W., K.W., S.W., Z.B.W., Z.J.W., and V.W. The Department first became involved with the family when a dog bit Z.B.W. and S.W. on two different dates in 2015. Both of the children required medical treatment for the dog bites. The Department offered family support and child care services, but mother refused the services because she "did not want anyone in her home or caring for her children."

On May 1, 2016, the Department again became involved with the family after V.W., who was ten months old at the time, almost drowned. Mother reported that she was taking a shower with V.W. and Z.J.W., who was two years old at the time. She left the bathroom to get dressed and thought her boyfriend, Juan Alcala, was watching the children.[2] When Alcala came into the bedroom, mother asked Alcala about the children. They ran back to the bathroom and found V.W. under the water because the tub drain was broken. V.W. was blue and unresponsive. M.W. ran next door and asked the neighbors to call 911, while mother and Alcala performed cardio-pulmonary resuscitation. First responders revived V.W. and transported him to the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Alcala was the biological father to the three youngest children, Z.B.W., Z.J.W., and V.W.

hospital. The hospital staff noticed that V.W. had a purple bruise on his right eyelid and that mother was "aggressive" with him. When asked about V.W.'s bruise, mother said that the day before, on April 30, 2016, Z.J.W. had knocked a chair off a table, and it hit V.W.

The next day, on May 2, 2016, the Department removed all seven of the children from mother's care. The three oldest children, who ranged in age from ten years old to seven years old, were placed in one foster home, and the four youngest children, who ranged in age from four years old to one year old, were placed in another nearby foster home.

The Department required mother to complete a parental capacity evaluation, which the evaluator completed on June 16, 2016. The evaluator expressed concern about mother deferring to Alcala, who was not a "safe independent care provider," for "primary care, limit setting, supervision, and discipline" of her children. The evaluator opined that mother had "an ongoing high risk for maladaptive parenting and inadequate supervision." Based on the recommendations of the evaluator, the Department required mother to participate in parenting classes, a substance abuse treatment program, domestic violence and relationship classes, one-on-one parent mentoring services, and intensive individual psychotherapy. Mother completed the counseling services and four parenting courses. She also completed the substance abuse treatment program and had all negative drug screens. Mother actively participated in visitation with her children. Although she had some financial struggles, mother maintained a job and housing.

By March 24, 2017, mother had made sufficient progress to permit the Department to start the process of allowing a trial home placement with the children and mother. The Department informed mother that Alcala, who had been diagnosed with schizoaffective disorder, was not allowed in the home because the children were not safe around him. The Department was concerned that Alcala was too "unpredictable," "angry," and "verbally aggressive." Furthermore, Alcala had not been compliant with his treatment plan for therapy and medication

management. The Department reviewed with mother the steps that she could take if Alcala came to the house while the children were present.

On April 1, 2017, the children began day visits with mother at her home, and on April 28, 2017, they started overnight visits. On April 30, 2017, the Department transitioned the four youngest children for a trial home placement.

On May 1, 2017, the Department learned that Alcala had been at the home while the children were present. Alcala had disciplined M.W. and "pushed him out the front door and threw his shoes at him." On May 2, 2017, the Department met with mother, who reported that Alcala had been to the home only one time. The Department warned mother that the children were at risk of being removed from her home if Alcala was present.

The children's guardian *ad litem* subsequently met with the children and learned that Alcala had been at the home multiple times and had spent the night while they were present. In spite of the Department's instructions, mother continued to allow Alcala to parent and discipline the children. Upon learning this information, the Department had "grave concerns regarding her[] ability to keep the children safe due to her poor judgement, lack of growth in increasing her protective capacity and past CPS [h]istory." Accordingly, the Department removed the children from mother's home on May 5, 2017, and placed them back in their foster homes. On May 7, 2017, Alcala boarded a bus and moved to California.

On July 18, 2017, the Department filed petitions for a permanency planning hearing with the goal of adoption. On August 15, 2017, the City of Hampton Juvenile and Domestic Relations District Court (the JDR court) approved the goal of adoption for the children. Mother appealed the permanency planning orders to the circuit court. On October 10, 2017 the JDR

court entered the orders terminating mother's parental rights to her children.[3] Mother also appealed the termination orders to the circuit court.

On January 26, 2018, the parties appeared before the circuit court. The Department reported that the children had "some behavior problems and struggles," but their foster parents were able to manage their behaviors. The children had established a good rapport with their foster parents.

Mother presented letters from several friends, who supported mother and expressed their willingness to help her as needed. Mother also wrote a letter, expressing her love for the children and her desire to have the children returned to her.

After hearing all of the evidence and argument, the circuit court found that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2) and approve the goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't

---

[3] The JDR court also terminated the fathers' parental rights to their children. S.W.'s father, Harry Lee Walker, appealed the permanency planning order and the termination of parental rights order to the circuit court, which approved the goal of adoption and terminated his parental rights. Walker appealed the circuit court's ruling to this Court. See Walker v. City of Hampton Dep't of Soc. Servs., Record No. 0312-18-1. Alcala and the other father did not appeal the JDR court's rulings.

of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights and approve the goal of adoption. Mother specifically asserts that the Department failed to prove that termination of her parental rights and approval of the goal of adoption were in the children's best interests. She further contends that the Department did not make reasonable efforts to assist her in remedying the conditions that led to the children's foster care placement and to reunite her with the children, especially after Alcala left Virginia on May 7, 2017.

The Department argues that mother did not raise these specific arguments with the circuit court, so this Court should not consider them under Rule 5A:18. The Department asserts that mother did not move to strike the Department's evidence, and her closing argument focused on allowing her to "have one final, last ditch attempt to make this work."

During her closing remarks, mother claimed that the trauma and abuse that she had faced in her life affected her choices, but "the ultimate removal of her children has got to be the one thing that . . . is the ultimate motivation for her." Mother requested that the circuit court give her "one additional opportunity to reunite" with her children, but she did not argue that the "statutory criteria" had not been met, as she argues on appeal. In addition, she endorsed the final orders as "Seen and objected to" with no further explanation.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "Ordinarily, endorsement of an order 'Seen and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." Herring

v. Herring, 33 Va. App. 281, 286 (2000) (quoting Lee v. Lee, 12 Va. App. 512, 515 (1991) (*en banc*)). "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for his objection in a motion to strike the evidence or in closing argument.'" Moncrief v. Div. of Child Support Enf't ex rel. Joyner, 60 Va. App. 721, 729 (2012) (quoting Lee, 12 Va. App. at 515). "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315 (2013) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)). "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493 (2002)).

Mother raises specific arguments on appeal that she did not raise in the circuit court; however, "[i]n interpreting Rule 5A:18, the Supreme Court has also held that 'if a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal.'" Moncrief, 60 Va. App. at 729 (quoting Brown v. Commonwealth, 279 Va. 210, 217 (2010)). The circuit court was aware that mother opposed the termination of her parental rights and the goal of adoption. Therefore, assuming without deciding that mother sufficiently preserved her arguments for appeal, we find that the circuit court did not err in terminating mother's parental rights to her children under Code § 16.1-283(C)(2) and approving the goal of adoption.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005).

Contrary to mother's arguments, the Department provided her with numerous services in an effort to remedy the conditions that led to the children's placement in foster care. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)).

The Department initially removed the children from mother's care because of inadequate supervision. In September 2015, a dog bit two of the children, and then, a few months later, in May 2016, the youngest child almost drowned when Alcala was supposed to be watching him. The Department referred mother to a parental capacity evaluator, and based on the evaluator's recommendations, the Department required mother to participate in parenting courses, counseling, substance abuse treatment, and domestic violence classes, all of which mother completed. The Department also arranged for mother to visit with the children, which she did on a regular basis. After mother complied with these requirements, the Department moved toward transitioning the children for a trial home placement with mother. The Department stressed to mother that Alcala, who was noncompliant with the Department's requirements, should not be around the children while they were at her house. Mother assured the Department that he would not be at the home. Mother, however, allowed Alcala to spend the night and to discipline her

children. Despite all of the services provided to mother, she continued to exercise poor judgment and also showed that she could not protect the children because she continued to allow Alcala to be around the children.

The circuit court found that mother was a "threat to these children" and did "not have the ability, or else she doesn't care about the safety of her children." The circuit court recognized mother's love for her children, but "she has not properly effected her job as being a mother to those children." When the Department placed the children with mother on a trial basis, the children had been in foster care for approximately one year. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Mother had the opportunity to show that she had remedied the conditions that led to the children's placement in foster care; instead, she proved that she could not apply what she had learned and adequately protect the children. At trial, she argued for more time, and on appeal, she asserts that the Department should have continued to provide her additional services after the children were removed from the trial home placement. The Department had been working with her for more than twelve months, and she had not demonstrated, during that time period, that she was able to care for the children. "Code § 16.1-283(C)(2)'s twelve-month time limit 'was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement.'" Dung Thi Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 171 (2014) (quoting L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56 (2003)).

Accordingly, the circuit court did not err in holding that it was in the children's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2) and approve the goal of adoption.[4]

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>

---

[4] With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." <u>Toms</u>, 46 Va. App. at 265 n.3.