UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Clements

HARRY LEE WALKER

MEMORANDUM OPINION[*]

v.      Record No. 0312-18-1      PER CURIAM
                                  MARCH 5, 2019

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Walter J. Ford, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.

(Kendall Bynum, Assistant City Attorney; Lola Rodriguez Perkins,
Senior Deputy City Attorney; Rachel E. Madden, Guardian *ad litem*
for the minor child; Riley Law, PLLC, on brief), for appellee.

Harry Lee Walker (father) appeals the circuit court orders terminating his parental rights and

approving the foster care goal of adoption. Father argues that the circuit court erred by

(1) approving the foster care goal of adoption because the City of Hampton Department of Social

Services (the Department) failed to prove that the goal of adoption was in the child's best interests

and that reasonable efforts were made to reunite the child with his parents and (2) terminating

father's parental rights under Code § 16.1-283(C)(1) and (C)(2) because the Department failed to

offer sufficient evidence to support the termination. Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the

decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Lela Weiford and father have one child together, S.W. Mother is the biological mother to six other children, M.W., X.W., K.W., Z.B.W., Z.J.W., and V.W. The Department first became involved with mother and her children when a dog bit Z.B.W. and S.W. on two different dates in 2015. Both of the children required medical treatment for the dog bites. The Department offered family support and child care services, but mother refused the services because she "did not want anyone in her home or caring for her children."

On May 1, 2016, the Department again became involved with mother and the children after V.W., who was ten months old at the time, almost drowned. Mother reported that she was taking a shower with V.W. and Z.J.W., who was two years old at the time. She left the bathroom to get dressed and thought her boyfriend, Juan Alcala, was watching the children.[2] When Alcala came into the bedroom, mother asked Alcala about the children. They ran back to the bathroom and found V.W. under the water because the tub drain was broken. V.W. was blue and unresponsive. M.W. ran next door and asked the neighbors to call 911, while mother and Alcala

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Alcala was the biological father to the three youngest children, Z.B.W., Z.J.W., and V.W.

performed cardio-pulmonary resuscitation. First responders revived V.W. and transported him to the hospital. The hospital staff noticed that V.W. had a purple bruise on his right eyelid and that mother was "aggressive" with him. When asked about V.W.'s bruise, mother said that the day before, on April 30, 2016, Z.J.W. had knocked a chair off a table, and it hit V.W.

The next day, on May 2, 2016, the Department removed all seven of the children from mother's care. The three oldest children, who ranged in age from ten years old to seven years old, were placed in one foster home, and the four youngest children, who ranged in age from four years old to one year old, were placed in another nearby foster home.

At the time of the removal, father was incarcerated; however, he was released from prison on September 6, 2016. Father contacted the Department and scheduled a meeting for September 27, 2016. Father did not appear for the meeting. The Department met father at a court hearing on October 11, 2016, and scheduled another meeting for October 14, 2016. Again, father did not appear for the meeting. The Department had no further contact with father. At the time of the circuit court hearing, he was incarcerated again.

Meanwhile, the Department required mother to complete a parental capacity evaluation, which the evaluator completed on June 16, 2016. The evaluator expressed concern about mother deferring to Alcala, who was not a "safe independent care provider," for "primary care, limit setting, supervision, and discipline" of her children. The evaluator opined that mother had "an ongoing high risk for maladaptive parenting and inadequate supervision." Based on the recommendations of the evaluator, the Department required mother to participate in parenting classes, a substance abuse treatment program, domestic violence and relationship classes, one-on-one parent mentoring services, and intensive individual psychotherapy. Mother completed the counseling services and four parenting courses. She also completed the substance abuse treatment program and had all negative drug screens. Mother actively participated in

visitation with her children. Although she had some financial struggles, mother maintained a job and housing.

By March 24, 2017, mother had made sufficient progress to permit the Department to start the process of allowing a trial home placement with the children and mother. The Department informed mother that Alcala, who had been diagnosed with schizoaffective disorder, was not allowed in the home because the children were not safe around him. The Department was concerned that Alcala was too "unpredictable," "angry," and "verbally aggressive." Furthermore, Alcala had not been compliant with his treatment plan for therapy and medication management. The Department reviewed with mother the steps that she could take if Alcala came to the house while the children were present.

On April 1, 2017, the children began day visits with mother at her home, and on April 28, 2017, they started overnight visits. On April 30, 2017, the Department transitioned the four youngest children for a trial home placement.

On May 1, 2017, the Department learned that Alcala had been at the home while the children were present. Alcala had disciplined M.W. and "pushed him out the front door and threw his shoes at him." On May 2, 2017, the Department met with mother, who reported that Alcala had been to the home only one time. The Department warned mother that the children were at risk of being removed from her home if Alcala was present.

The children's guardian *ad litem* subsequently met with the children and learned that Alcala had been at the home multiple times and had spent the night while they were present. In spite of the Department's instructions, mother continued to allow Alcala to parent and discipline the children. Upon learning this information, the Department had "grave concerns regarding her[] ability to keep the children safe due to her poor judgement, lack of growth in increasing her protective capacity and past CPS [h]istory." Accordingly, the Department removed the children

from mother's home on May 5, 2017, and placed them back in their foster homes. On May 7, 2017, Alcala boarded a bus and moved to California.

On July 18, 2017, the Department filed petitions for a permanency planning hearing with the goal of adoption. On August 15, 2017, the City of Hampton Juvenile and Domestic Relations District Court (the JDR court) approved the goal of adoption for the children. Father and mother appealed the permanency planning orders to the circuit court. On October 10, 2017 the JDR court entered the orders terminating father's and mother's parental rights to their children. Father and mother also appealed the termination orders to the circuit court.

On January 26, 2018, the parties appeared before the circuit court. The Department reported that the children had "some behavior problems and struggles," but their foster parents were able to manage their behaviors. The children had established a good rapport with their foster parents.

Mother presented letters from several friends, who supported mother and expressed their willingness to help her as needed. Mother also wrote a letter, expressing her love for the children and her desire to have the children returned to her. Father was incarcerated, and there was no evidence presented as to the length of his sentence.

After hearing all of the evidence and argument, the circuit court found that it was in the children's best interests to terminate father's and mother's parental rights and approve the goal of adoption. This appeal followed.[3]

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best

---

[3] Mother also appealed the circuit court's rulings. See Weiford v. City of Hampton Dep't of Soc. Servs., Record No. 0311-18-1.

interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred in finding that the evidence was sufficient to terminate his parental rights and approve the goal of adoption. Father specifically asserts that the Department failed to prove that termination of his parental rights to S.W. and the approval of the goal of adoption were in S.W.'s (or the other children's) best interests. He further contends that the Department did not make reasonable efforts to assist mother in remedying the conditions that led to the children's foster care placement and to reunite her with the children, especially after Alcala left Virginia on May 7, 2017.

The Department argues that father did not raise these specific arguments with the circuit court, so this Court should not consider them under Rule 5A:18. The Department asserts that father did not move to strike the Department's evidence, and his closing argument focused on giving mother another chance. He never argued against his parental rights being terminated. In addition, father endorsed the final orders as "Seen and objected to" with no further explanation.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "Ordinarily, endorsement of an order 'Seen and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." Herring v. Herring, 33 Va. App. 281, 286 (2000) (quoting Lee v. Lee, 12 Va. App. 512, 515 (1991) (*en*

*banc*)). "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for his objection in a motion to strike the evidence or in closing argument.'" Moncrief v. Div. of Child Support Enf't ex rel. Joyner, 60 Va. App. 721, 729 (2012) (quoting Lee, 12 Va. App. at 515). "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493 (2002)). "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315 (2013) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(1) and (C)(2). For the first time on appeal, father argues that the circuit court erred by terminating his parental rights under Code § 16.1-283(C)(1) and that his incarceration was "good cause" for his failure to maintain contact with S.W. and plan for his future. Furthermore, he does not offer any arguments as to why *his* parental rights should not be terminated under Code § 16.1-283(C)(2). Father never presented any evidence or any argument regarding the termination of his parental rights. At trial, his arguments focused solely on the request for mother's parental rights not to be terminated. Therefore, we will not consider on appeal any of his arguments regarding the termination of his parental rights.

Likewise, father raises for the first time on appeal that the Department failed to meet the statutory criteria for the permanency plan.[4] Since father failed to make this specific argument to the circuit court, we will not consider it. Rule 5A:18. See Tackett, 62 Va. App. at 315.

---

[4] Father acknowledges in his brief to this Court that his incarceration prevented him from being reunited with S.W.

- 7 -

Accordingly, the circuit court did not err in terminating father's parental rights and approving the goal of adoption.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>